[No. D045379. Fourth Dist., Div. One. Nov. 23, 2005.]

LOU CONDE, Plaintiff and Appellant, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

COUNSEL

James Bruce Henderson for Plaintiff and Appellant.

Michael J. Aguirre, City Attorney, Leslie J. Girard, Assistant City Attorney, and Maria C. Severson, Chief Deputy City Attorney, for Defendant and Respondent City of San Diego.

Sullivan, Wertz, McDade & Wallace, Leo Sullivan and Leslie F. Keehn for Defendant and Respondent Charles Abdelnour.

Stanford and Associates, Dan L. Stanford; and Robert P. Ottilie for Defendant and Respondent George Stevens.

OPINION

**O'ROURKE, J.**—The trial court denied Lou Conde's petition for writ of mandate that sought to prohibit George Stevens from filling the San Diego City Council District 4 seat declared vacant when Councilmember Charles Lewis died. Conde contends: (1) under the San Diego City Charter,[1] after a councilmember has served two consecutive terms for a particular district, that individual is barred for life from running for that specific office; and (2) the date of death of an elected official is the date the office should become vacant. We conclude Conde's contentions find no support in the plain language of either the charter or the municipal code.

## FACTUAL AND PROCEDURAL SUMMARY

George Stevens represented District 4 as a councilmember for two consecutive four-year terms from 1994–2002. His successor, Charles Lewis, served from December 2002 until his death on August 8, 2004. Lewis's seat was not declared vacant until September 7, 2004, when, pursuant to ordinance number 19316, the San Diego City Council set special elections for November 16, 2004.

On August 19, 2004, Conde filed a petition for writ of mandate in the San Diego Superior Court and sought a declaration that the District 4 seat became

---

[1] All statutory references are to the San Diego City Charter unless otherwise stated.

vacant on the date of Lewis's death, and that elections should be set for 90 days thereafter, or on or before November 6, 2004. Conde also sought a declaration that no person who had served two consecutive four-year terms was eligible to serve any portion of the remainder of Lewis's term.

On September 8, 2004, the court denied Conde's petition because it found that under the applicable law, a vacancy exists when the city council declares it. The court also ruled that the issue of term limits was not ripe for adjudication because Stevens had not formally declared his candidacy and was not joined as a party to the litigation.

On September 20, 2004, the San Diego City Clerk approved Stevens's nomination as a candidate for the elections.

On September 22, 2004, Conde sought to join Stevens as a Doe defendant and requested a reconsideration of the court's ruling regarding term limits.

On October 7, 2004, the court joined Stevens as a defendant, and ruled that Stevens was not prohibited from contesting the District 4 seat or from serving in office if elected.

On November 2, 2004, Conde appealed both of the court's rulings.

On January 4, 2005, Tony Young defeated Stevens in a runoff election.

## DISCUSSION

### I.

Conde and the City of San Diego acknowledge this case is technically moot because the elections were held and Stevens lost. Nonetheless, we will exercise our inherent discretion to decide the case on the merits because the issues presented are of broad public interest and are likely to recur. (*Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 172 [126 Cal.Rptr.2d 727, 56 P.3d 1029].)

### II.

### A.

Stevens was not barred by term limits from running for the District 4 seat in the 2004 elections under the plain meaning of the charter, section 12(f). (*Mason v. Retirement Board* (2003) 111 Cal.App.4th 1221, 1227

[4 Cal.Rptr.3d 619] [the interpretation of a city charter is reviewed de novo on appeal].) "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. [Citation.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters)." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

The City of San Diego electorate adopted an amendment to section 12, now section 12(f), that established term limits for councilmembers. It states in relevant part, "Notwithstanding any other provision of this Charter and commencing with elections held in 1992, no person shall serve more than two consecutive four-year terms as a Council member from any particular district. If for any reason a person serves a partial term as Councilmember from a particular district in excess of two (2) years, that partial term shall be considered a full term for purposes of this term limit provision." (*Ibid.*)

■ Conde concedes that nothing in section 12(f) creates a lifetime ban, but interprets that section to make the word "consecutive" surplusage. "Consecutive" is defined as "having no interval or break." (Webster's 3d New Internat. Dict. (1993) p. 482.) Accordingly, section 12(f) permits a city councilmember to serve continually in the same district for two four-year terms, but requires an intervening period outside of office before that councilmember may run for that district another time.

■ Here, the charter was not violated because Stevens did not contest the District 4 seat immediately after his two consecutive four-year terms ended. Instead, Lewis replaced him in office, and served for almost two years. Therefore, if Stevens had been elected in 2004, he would have served from approximately January 2005 until December 2006; this time period would have been nonconsecutive with his previous two terms served.[2]

Conde relies on language contained in the official ballot pamphlet that stated, "If a two-term limit was good enough for George Washington, Thomas Jefferson and Dwight Eisenhower, it is certainly good enough for members of San Diego's City Council;" and, "Vote 'yes' on Proposition A. Stop career politicians. Limit their terms to two." We determine such language is "not

---

[2] The San Diego Municipal Code, section 27.0709(a) states, "The term of office for an individual elected to fill a vacancy in the office of a City Council district pursuant to Division 9 of this article shall commence at the time the City Council adopts the resolution declaring the results of such election to the vacant office, and shall expire at 10:00 a.m. on the first Monday after the first calendar day in December following the next District or City-wide General Election to fill that office, at the same time that the terms of other elective officers expire."

highly authoritative in construing the measure" because it "overstate[s] the [positive] effects of the [proposed] measure." (*Legislature v. Eu* (1991) 54 Cal.3d 492, 505 [286 Cal.Rptr. 283, 816 P.2d 1309] (*Eu*).) Instead, our interpretation of section 12(f) finds support in the San Diego City Attorney's November 22, 1991, "Report to the Honorable Mayor and City Council" regarding "proposed charter amendments establishing two term limit for elected city officials," in which the City Attorney expressly rejected the notion the term limit measure amounted to a lifetime ban and concluded, "[T]he term limit applies only to consecutive terms."

Conde's reliance on *Eu, supra,* 54 Cal.3d 492, and *Schweisinger v. Jones* (1998) 68 Cal.App.4th 1320, 1321 [81 Cal.Rptr.2d 183] (*Schweisinger*) is misplaced. *Eu* analyzed the scope of Proposition 140 regarding term limits for statewide office. The ballot measure stated, " 'No member of the Assembly may serve more than 3 terms.' " (*Eu, supra,* at p. 504.) The court found the plain text of the measure ambiguous; it therefore referred to the arguments contained in the official ballot pamphlet and concluded Proposition 140 effected a lifetime ban because, "No suggestion is made that only a consecutive term limitation was contemplated." (*Id.* at p. 505.) To the contrary, the ballot pamphlet made numerous references to a lifetime ban. *Schweisinger* merely applied *Eu* to the specific case of a state Assembly member who had served two full terms and a portion of a term before she was recalled. The court held she was barred from running as a candidate in a subsequent election because if elected she would ultimately serve three terms and a partial term, in violation of Proposition 140. (*Schweisinger, supra,* at p. 1325.)

## B.

Conde alternatively contends, for the first time on appeal, that Stevens's 2004 election bid was improper because Stevens would have served the remainder of Lewis's term if he had been elected; consequently, less than four years would have elapsed since Stevens last served as a councilmember in 2002. Conde cites no relevant authority for this contention, and we have found none. The charter and municipal code are silent regarding whether a councilmember must no longer represent a district for an entire four-year term before becoming eligible to run for the seat he or she previously held for two consecutive four-year terms. Accordingly, we decline Conde's invitation to read into the charter and municipal code a requirement that they do not contain. (*San Francisco Unified School Dist. v. San Francisco Classroom Teachers Assn.* (1990) 222 Cal.App.3d 146 [272 Cal.Rptr. 38] [in construing a statute, the court "cannot create exceptions, contravene plain meaning, insert what is omitted, omit what is inserted, or rewrite the statute"].)

At any rate, the Legislative history of section 12(f) does not support Conde's contention. The San Diego City Attorney wrote a November 6, 1991, "Report to the Committee on Rules, Legislation and Intergovernmental Relations" that compared San Diego's term limit provision with similar provisions contained in the city charters of Redondo Beach and San Francisco. Although San Francisco's charter specifically stated, "No person having served two successive year terms may serve as a supervisor, either by election or appointment, until at least four years after the expiration of the second successive term in office," section 12(f) does not follow it in mandating that after a councilmember represents a particular district for two consecutive terms, he or she must take a four-year hiatus from that office before becoming eligible to represent that district again as a councilmember.

### III.

We reject Conde's claim that "the Municipal Code incorrectly implements the City's charter in that the date of a vacancy resulting from death is the date of the death." In fact, the charter does not address the timing of a declaration of a vacancy resulting from a councilmember's death, and instead it mandates that all municipal elections be conducted according to the Municipal Code. (§§ 8, 12(h)(2).)

Here, the term, "declaration of vacancy" carries a precise meaning, under which Lewis's seat became vacant when the city council so declared. "A vacancy may occur as a result of death." (Mun. Code, § 27.0702.) "If a vacancy occurs by reason of death or un-excused absences, the date of the vacancy will be the date of adoption of the City Council's Declaration of Vacancy." (Mun. Code, § 27.0703(b).) When a vacancy exists, the city council must issue a declaration of vacancy at its next regularly scheduled meeting, or at a special meeting called for that purpose. (Mun. Code, § 27.0704.)

Lewis died on August 8, 2004. In honor of his death, Mayor Murphy suspended the previously scheduled August 9, 2004, city council meeting and rescheduled it for August 10, 2004. Immediately thereafter, the city council took a scheduled legislative recess. At the first meeting after it returned, it declared the District 4 seat vacant. The city council's timing of the declaration of vacancy followed the procedure outlined in the municipal code.

Conde relies on *Pollack v. Hamm* (1970) 3 Cal.3d 264, 272 [90 Cal.Rptr. 181, 475 P.2d 213], which is distinguishable because although the court in that case declared, "[a] vacancy occurs in a superior court office when an elected incumbent dies," the court was not constrained by a statute that defined the date and manner for a vacancy to occur.

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and Haller, J., concurred.