[Nos. E040125, E040973. Fourth Dist., Div. Two. Oct. 12, 2007.]

CITY OF RIVERSIDE, Plaintiff and Appellant, v.
KEN STANSBURY et al., Defendants and Respondents.

**COUNSEL**

Best, Best & Krieger, Kevin K. Randolph, Kevin T. Collins, Daniel M. Fuchs and Howard B. Golds for Plaintiff and Appellant.

Bannan, Green, Frank & Terzian and Kristin A. Pelletier for League of California Cities and California Association of Counties as Amici Curiae on behalf of Plaintiff and Appellant.

Richard Brent Reed for Defendant and Respondent Ken Stansbury.

No appearance for Defendant and Respondent Riversiders for Property Rights.

ACLU Foundation of Southern California, Peter J. Eliasberg; Mitchell, Silberberg & Knupp and Michael E. Chait for Jeff B. Furchtenicht as Amicus Curiae on behalf of Defendants and Respondents.

---

**OPINION**

**MILLER, J.**—Ken Stansbury (Stansbury), on behalf of Riversiders for Property Rights (RPR), submitted to the City of Riverside (the City) a ballot initiative measure to amend the City's charter with respect to its practice of eminent domain. The City filed a lawsuit against Stansbury and RPR (respondents), seeking a declaration that the proposed initiative was invalid as it was not a proper subject for a local initiative. Contending that the City's lawsuit was "an affront to [their] First Amendment rights," Stansbury and RPR countered with an anti-SLAPP[1] motion (Code Civ. Proc.,[2] § 425.16), which was granted. On appeal, the City maintains that its complaint was directed not at protected conduct, as required under the anti-SLAPP statute, but rather, at the validity of the proposed initiative. We agree and reverse the order. Indeed, as the City and amici curiae[3] point out, if the trial court's ruling is allowed to stand, no one could ever challenge an initiative's constitutionality prior to the election, which is contrary to law.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2005, Stansbury submitted to the City the text of the proposed initiative, along with a request to forward a copy to the city attorney, so that a ballot title and summary could be prepared. As submitted, the proposed initiative read:

Section 504: "Notwithstanding any other provision of law, neither this City nor any of its subdivisions shall use eminent domain to take private property without the consent of the owners to be used for economic development. The

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

[2] All further statutory references will be to the Code of Civil Procedure unless otherwise indicated.

[3] All references in this opinion to "amici curiae" refer to the League of California Cities and California Association of Counties and their brief filed with this court on September 20, 2006.

term 'economic development' means any activity to increase tax revenue, tax base, employment, or general economic health, when that activity does not result in (1) the transfer of land to public ownership, such as for a road, hospital or military base; (2) the transfer of land to a private entity that is a common carrier, such as a railroad or utility; or (3) the transfer of property to a private entity when eminent domain will remove a harmful use of the land, such as the removal of public nuisances, removal of structures that are beyond repair or that are unfit for human habitation or use, or acquisition of abandoned property."

Section 505: "Private property acquired through eminent domain without the consent of the owner shall not be dedicated, sold, leased in substantial part, or otherwise transferred to a private person, partnership, corporation, or any other entity for a period of fifteen (15) years following the acquisition of the property by the City, except that property may be transferred or leased (1) to private entities that are public utilities or common carriers and (2) to private entities that occupy an incidental area in a public project, such as a retail establishment on the ground floor of a public building. For the purposes of this section, 'incidental area' shall be defined as an area that does not exceed 10% of the total square footage of the property at issue."

Section 506: "Neither the City of Riverside nor any of its Departments may undertake a contractual obligation to use its powers of eminent domain."

In November 2005, the City filed its declaratory relief action, naming Stansbury, individually, and RPR, "an entity of unknown form," as defendants. As a first cause of action, the City alleged the proposed initiative was invalid "because it purports to restrict or limit the eminent domain power of . . . the City, said eminent domain power being a matter of statewide concern and not subject to amendment by local initiative." The City thus sought a declaration that the proposed initiative was invalid in that it was not a proper subject for a local initiative,[4] and asked to be relieved from any obligation to place the proposed initiative on the ballot. In its second cause of action, the City alleged the proposed initiative was invalid "because it is inconsistent and self-contradictory in that section 504 . . . purports to restrict the City from taking property in eminent domain for economic development except in certain limited circumstances, while section 505 . . . purports to restrict the City from transferring property taken in eminent domain for 15 years from the date of acquisition even if such acquisition is permissible under section 504 . . . ." The City thus sought a declaration to that effect as

---

[4] A week before oral argument was held, Stansbury asked us to take judicial notice of recently enacted eminent domain initiatives to amend city charters in several cities in this state. We deny his request.

well. On both causes of action, the City also sought a judgment for costs incurred in connection with the lawsuit.

On November 17, 2005, Stansbury was personally served with the complaint, on behalf of himself and RPR. Fifteen days later, respondents filed their anti-SLAPP motion. In essence, they asserted that the City, by its lawsuit, was "seek[ing] a ruling invalidating the petition before the voters have even had the opportunity to consider it. Such an affront to First Amendment rights is subject to a motion to strike under C.C.P. § 425.16(a)." A hearing was scheduled for January 27, 2006.

During December 2005, separate demurrers were filed on behalf of Stansbury and RPR, and a motion for summary judgment was filed on behalf of the City. The City also filed opposition to the demurrers.[5]

Hearing on the demurrers and the motions eventually proceeded on March 10, 2006. The court granted the anti-SLAPP motion, rendering moot the demurrers and the summary judgment motion. The City noticed its appeal, after which the court awarded respondents attorney's fees and costs in the total sum of $14,328, and a second appeal was filed. At the City's request, the appeals have been consolidated for purposes of oral argument and decision.

## DISCUSSION

A. *The appeal is technically moot; however, we shall resolve the issue presented because it is a matter of broad public interest which is likely to recur.*

In June 2006, while its first appeal was pending and before it noticed its second appeal, the City filed a motion pursuant to Evidence Code sections 459, subdivision (a), and 452, subdivision (h), informing us that respondents had failed to complete the process necessary for placing the subject initiative on the ballot, and asking us to take judicial notice of the fact that on May 30, 2006, another eminent domain initiative petition, which was "verbatim identical" to the initial one, had been filed. On our own motion, we issued an order asking the parties to submit points and authorities as to whether the appeal should be dismissed as moot.[6]

---

[5] None of these documents are included in the record on appeal. We are therefore not privy to their contents.

[6] The order stated, in part: "This appeal is arguably moot. . . . The initiative failed to complete the process necessary for placement on the ballot. Thus, validity of the initiative is no longer viable, which means the complaint is moot, in turn rendering moot the granting of the special motion to strike and this appeal. The fact that respondents are attempting to place a new initiative on the ballot of the same import as the failed initiative does not revive this

The City filed a supplemental letter brief, citing *Edelstein v. City & County of San Francisco* (2002) 29 Cal.4th 164 [126 Cal.Rptr.2d 727, 56 P.3d 1029] (*Edelstein*) and *Conde v. City of San Diego* (2005) 134 Cal.App.4th 346 [36 Cal.Rptr.3d 54] (both involving preelection challenges), urging us to proceed with its appeal; neither Stansbury nor RPR offered a response. We invited respondents to reply to the City's position in their respondent's brief, which they did not, and reserved for decision with the appeal our rulings on both the request for judicial notice and the issue of mootness.

██ The *Edelstein* court, noting that an election which had taken place while Supreme Court review was pending had arguably rendered moot the matter before it, stated: " ' "[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." [Citation.] We have frequently exercised such discretion to resolve constitutional issues pertaining to election laws raised by candidates in elections that were held before decision could be reached. [Citations.]' [Citation.] The question presented by this case is of broad public interest and it is likely to recur, if not in San Francisco elections, then in elections in other charter cities." (*Edelstein*, *supra*, 29 Cal.4th at p. 172.)

And so it is here. As the City points out, since the United States Supreme Court's decision in *Kelo v. New London* (2005) 545 U.S. 469 [162 L.Ed.2d 439, 125 S.Ct. 2655], "eminent domain has become a high-visibility issue. It is undeniably a matter of 'broad public interest.' Moreover, the question of whether the anti-SLAPP statute imposes a blanket prohibition on all pre-election challenges is both of broad public interest and likely to recur." Accordingly, although the appeal is "technically moot" (*Conde v. City of San Diego*, *supra*, 134 Cal.App.4th at p. 349), we now grant the request for judicial notice and exercise our inherent discretion to consider the issue presented, as it is of broad public interest and likely to recur.

## B. *Applicable principles.*

██ In enacting section 425.16, the Legislature intended a remedy for the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) To that end, the anti-SLAPP statute provides a mechanism for quickly identifying and eliminating civil actions filed for the purpose of chilling the exercise of free speech. Under section

appeal, although arguably the mootness of this appeal should be disregarded to deal with an important issue that escapes review. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 642 et seq., pp. 669 et seq.)"

425.16, subdivision (b)(1), "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

■ "[S]ection 425.16 requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. [Citation.] If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*).)

" 'Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

■ In determining whether the anti-SLAPP statute applies in a given situation, we must remember that "the mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' [Citations.]" (*Cotati, supra*, 29 Cal.4th at pp. 76–77.)

Stated another way, "[t]hat a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such. . . . [¶] . . . [T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the

plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)[7] . . . .' [Citations.]" (*Cotati, supra,* 29 Cal.4th at p. 78.)

C. *The anti-SLAPP motion should have been denied because respondents failed to establish that the City's lawsuit arose from a protected activity.*

Contending that its complaint "does not carry any of the hallmarks of a SLAPP lawsuit," the City argues its lawsuit arose not from respondents' "protected activities," but rather, from the text of the facially invalid initiative proposed by respondents, for which it sought a judicial declaration as to its validity. Moreover, it maintains it "did nothing to discourage or punish collecting signatures in support of the Proposed Initiative, seeking public support for the Proposed Initiative, engaging in the verification process for the petition signatures that [respondents] collected, or taking any of the further steps necessary to ensure that the Proposed Initiative would be placed on a ballot and presented to the electorate." Thus, citing our high court's decision in *Cotati,* the City contends the trial court erred in that a request for a judicial declaration as to the validity of an initiative is essentially exempt from the procedure established by section 425.16.

*In Cotati,* the owners of a mobilehome park filed an action in federal court, challenging the city's rent stabilization ordinance on constitutional grounds. The city then filed a state court action, seeking a judicial declaration as to the validity of the ordinance, after which the mobilehome park successfully brought an anti-SLAPP motion. Our high court reversed the trial court's order, finding that the underlying lawsuit did not arise from protected speech, but rather, that it sought a judicial determination as to the constitutionality of the ordinance. The court explained that "the actual controversy giving rise to both actions—the fundamental basis of each request for declaratory relief— was the same underlying controversy respecting [the] ordinance." (*Cotati, supra,* 29 Cal.4th at p. 80.)

██ The same rationale applies here. By its declaratory relief action, the City was simply asking for guidance as to the constitutionality of the

---

[7] Pursuant to section 425.16 subdivision (e), an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

proposed initiative. Indeed, the City did nothing to limit respondents' activities in connection with the initiative, nor did the City, by its action, otherwise impact respondents' First Amendment rights. Moreover, it was proper for the City to initiate its declaratory relief action as a means of disputing, in a preelection challenge, the validity of the initiative. (*City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (2003) 113 Cal.App.4th 465, 480–481 [6 Cal.Rptr.3d 367]; *City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384, 394 [103 Cal.Rptr.2d 269] (*Dunkl*); *Alexander v. Mitchell* (1953) 119 Cal.App.2d 816, 829–830 [260 P.2d 261].)

■ Nonetheless, Stansbury insists that *Cotati* does not apply because it involved an ordinance rather than an initiative measure—a point with which the trial court agreed. However, as amici curiae point out, this is a distinction without a difference. *Cotati* simply stands for the proposition that a court, in determining whether the anti-SLAPP statute applies, looks at whether a lawsuit arises out of protected activity rather than a more fundamental dispute. Above all, as we have already said, what matters is the *basis* for the lawsuit; that the City filed its declaratory relief action on the heels of the submission of the initiative is not dispositive.

■ Underlying Stansbury's position is the faulty premise that his right to petition is not complete and thus cannot be challenged—until after the proposed initiative is placed on the ballot and the electorate determines whether it should pass. While he is correct insofar as he emphasizes that the right of petition is a protected activity, with which no one can interfere, he is mistaken in his assertion that "[o]nly after the issue has been tried at the ballot box by the electorate has an initiative's proponent exercised his right of petition. The ballot *is* the petition and placing the initiative on the ballot is the citizen's right." He further contends, again without citation to authority, that "[t]he only time that an initiative can be challenged without interfering with the right of petition is after the initiative is passed. At that point, the initiative is no longer a petition and the right of petition is not impacted." Not so. In taking this untenable position, Stansbury ignores that "[i]t is well accepted that preelection review of ballot measures is appropriate where the validity of a proposal is in serious question, and where the matter can be resolved as a matter of law before unnecessary expenditures of time and effort have been placed into a futile election campaign." (*Dunkl, supra,* 86 Cal.App.4th at p. 389.)

■ Not surprisingly, Stansbury insists that it is the City which misconstrues the right of petition. He insists that the deference which should be afforded the initiative process itself "militates in favor of the Proposed Initiative and does not permit a presumption that an initiative is invalid just because a public entity says it is. Deference, then, should be afforded to [his]

right of petition and, therefore, deference should be given to the lower court's ruling." Further, citing a 1921 Pennsylvania Supreme Court decision,[8] he contends he has an unfettered right to circulate a petition and to present it to the sovereign, which right "cannot lawfully be infringed, even momentarily, by the state." He argues "[a] citizen's right to petition his government is sacred. The right to redress grievances by placing them before the sovereign has been fundamental to Western Civilization since the 13th Century—since the signing of the Magna Carta. Throughout our history, the Right to Petition has, traditionally, been jealously guarded as 'one of the most precious rights of our democratic process.' [Citation.]" In taking this position, Stansbury overlooks the fact there is no constitutional right to place an *invalid* initiative on the ballot. (*Dunkl, supra,* 86 Cal.App.4th at p. 389.) Moreover, he ignores entirely the body of law which recognizes preelection challenges to initiative measures.

In *Dunkl, supra,* 86 Cal.App.4th at page 394, for example, although an anti-SLAPP motion was rendered moot when the trial court granted the city's summary judgment motion, the case stands for the proposition that preelection review of ballot measures is appropriate where the proposal's validity is in question and where the matter can be resolved as a matter of law, without the unnecessary expenditure of time and effort by a futile election campaign. Nor is there any value " 'in putting before the people a measure which they have no power to enact.' " (*Id.* at p. 394.)

Our court was faced with a similar issue in *Citizens for Responsible Behavior v. Superior Court* (1991) 1 Cal.App.4th 1013, 1024 [2 Cal.Rptr.2d 648], a case also involving the City of Riverside. There, the City refused to place an initiative on the ballot, and the proponent filed a petition for writ of mandate in the superior court to have the initiative ordered placed on the ballot.[9] The petition was denied, the court finding that "the proposed initiative was constitutionally defective and also represented an impermissible effort to amend the City's charter by ordinance." (1 Cal.App.4th at p. 1019.) On the question of whether it is appropriate for a court to address a preelection challenge of a proposed initiative, we observed that "if an initiative ordinance is invalid, no purpose is served by submitting it to the voters. The costs of an election—and of preparing the ballot materials necessary for each measure— are far from insignificant. [Citation.] Proponents and opponents of a measure may both expend large sums of money during the election campaign. Frequently, the heated rhetoric of an election campaign may open permanent

---

[8] *Spayd v. Ringing Rock Lodge* (1921) 270 Pa. 67 [113 A. 70].

[9] In *Citizens,* on the day the proponent filed its writ petition, the City filed a complaint for declaratory relief, seeking a judgment that its refusal to place the initiative on the ballot was proper. (*Citizens for Responsible Behavior v. Superior Court, supra,* 1 Cal.App.4th at p. 1020.) In contrast, the City in the present case sought a judicial declaration *before* refusing to place the initiative on the ballot.

rifts in a community. That the people's right to directly legislate through the initiative process is to be respected and cherished does not require the useless expenditure of money and creation of emotional community divisions concerning a measure which is for any reason legally invalid." (*Id.* at p. 1023.)

The City also relies on *Visher v. City of Malibu* (2005) 126 Cal.App.4th 364 [23 Cal.Rptr.3d 816]. There, an order denying an anti-SLAPP motion was affirmed on appeal. Appellants brought a mandamus action to force the city to process a building permit while the city was engaged in litigation with the California Coastal Commission. The city filed an anti-SLAPP motion alleging that the lawsuit arose from the city's decision to sue the California Coastal Commission. Relying on *Cotati*, the Second District affirmed the denial of the motion, explaining that the petition arose from the city's refusal to process appellants' application for a permit—not from the city's lawsuit against the coastal commission. The refusal predated the lawsuit against the coastal commission and appellants' lawsuit against the city. "While the onset of litigation may have given Malibu an additional reason not to process [coastal development permits], it was Malibu's refusal to process [coastal development permits] of which the [appellants] complained, not Malibu's engagement in the protected activity of suing the Coastal Commission. As in *Cotati*, both lawsuits grew from the same single controversy, and neither was an offshoot of the other." (*Id.* at p. 370.)

The instant case is to be distinguished from *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43 [24 Cal.Rptr.3d 72], in which an order *denying* an anti-SLAPP motion was reversed on appeal. There, the City of Pasadena had cross-complained against Foundation for Taxpayer and Consumer Rights (FTCR) because, the Court of Appeal explained, FTCR had the "temerity" to intervene in pending litigation to force Pasadena to put into effect an initiative which had been approved by the voters and because FTCR had sponsored the initiative and supported its constitutionality, all of which were protected activities. (*Id.* at p. 75.) The cross-action involved not the constitutionality of the initiative, as in our case, but rather, the dispute over the city's refusal to comply with Government Code section 34460 and its duty to perform certain ministerial acts under the statute. (126 Cal.App.4th at p. 84.) Thus, because the cross-action "arose from" FTCR's protected act of filing litigation, it was properly subject to a motion to strike under section 425.16.

In contrast, here, as in *Cotati*, plaintiff filed its lawsuit for the express purpose of determining the constitutionality of a proposed regulation. Unlike FTCR, respondents in this case are free to continue to promote the proposed initiative by meeting whatever legal requirements are necessary to place it on the ballot.

■ In light of our conclusion that the anti-SLAPP motion should have been denied for failure to meet the first prong of the statute, we need not determine whether the City has demonstrated a probability for success on the merits for purposes of the second prong. (See *Cotati, supra,* 29 Cal.4th at pp. 80–81.) Accordingly, Stansbury's final argument, that the City was incapable of demonstrating that its declaratory relief action had merit because it had no standing to sue and because the controversy was not ripe, is essentially a nonissue. Indeed, because we do not reach the "probability of success" prong of the anti-SLAPP statute, we need not address the issue of standing. Suffice it to state, standing is properly tested by means of demurrer (see *Pillsbury v. Karmgard* (1994) 22 Cal.App.4th 743, 757–758 [27 Cal.Rptr.2d 491]), and while we presume that respondents did raise that issue in their demurrers, the issue is not before us in this appeal. As for ripeness, to the extent the trial court considered this issue in granting the anti-SLAPP motion,[10] we have already concluded that the City's *preelection* challenge to the proposed initiative was appropriate.

D. *Because we reverse the order granting the motion, we must also reverse the attorney's fee awards.*

The trial court awarded fees to respondents under section 425.16, subdivision (c). Because respondents are no longer the prevailing parties, however, those fee awards are also reversed.[11]

---

[10] In this regard, the trial court was mistaken when it interpreted *Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142 [90 Cal.Rptr.2d 810, 988 P.2d 1089] as saying that "to have a declaratory relief action before the initiative is ever enacted is not something the Court should consider, because the initiative may not pass." In refusing to consider the City's position that preelection challenges are appropriate, the court viewed the matter as a "local issue," essentially finding that the City had no chance of prevailing in any event. Regardless of the court's reason for determining that it should not consider the merits of the action because the initiative might not pass, i.e., that the action was not ripe for adjudication, the court erred in determining that the City's preelection challenge was improper. As our high court stated in *American Federation of Labor v. Eu* (1984) 36 Cal.3d 687, 697 [206 Cal.Rptr. 89, 686 P.2d 609], "The presence of an invalid measure on the ballot steals attention, time and money from the numerous valid propositions on the same ballot. It will confuse some voters and frustrate others, and an ultimate decision that the measure is invalid, coming after the voters have voted in favor of the measure, tends to denigrate the legitimate use of the initiative procedure."

[11] We note that, inasmuch as the City is now the prevailing party, upon motion in the trial court and a showing that respondents' motion to strike was "frivolous or [was] solely intended to cause unnecessary delay" (§ 425.16, subd. (c)), the City may be entitled to attorney's fees.

## DISPOSITION

The orders appealed from are reversed. The City shall recover its costs on appeal.[12]

Richli, Acting P. J., and King, J., concurred.

A petition for a rehearing was denied October 30, 2007, and respondents' petition for review by the Supreme Court was denied February 13, 2008, S158477. Baxter, J., was of the opinion that the petition should be granted.

---

[12] Citing section 907 and California Rules of Court, former rule 27(e), Stansbury urges us to assess sanctions against the City for filing a frivolous appeal. He also seeks an award of attorney's fees for defending against an unsuccessful appeal from an order granting an anti-SLAPP motion. (*Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260 [105 Cal.Rptr.2d 674]; *Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443 [121 Cal.Rptr.2d 275].) Because we are reversing the order, we of course deny Stansbury's requests. We note, however, that even if we were to affirm the order granting the anti-SLAPP motion, it would be for the trial court to entertain a request for attorney's fees.