Filed 7/9/14   Nordhoff Way v. Walgreen CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NORDHOFF WAY, LLC, | B249263 |
| Plaintiff, Cross-defendant and Appellant, | (Los Angeles County Super. Ct. No. BC443562) |
| v. | |
| WALGREEN CO., | |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Susan Bryant-Deason, Judge.  Affirmed.

Elkins Kalt Weintraub Reuben Gartside, Jeffrey K. Riffer and Julie Z. Kimball for Plaintiff, Cross-defendant and Appellant.

Willenken Wilson Loh & Delgado, Jason H. Wilson and W. Scott Norton for Defendant, Cross-complainant and Respondent.

_____

Nordhoff Way, LLC, (Nordhoff) appeals from the trial court's order denying Nordhoff's special motion to strike the first amended cross-complaint of Walgreen Co. (Walgreens) as a Strategic Lawsuit Against Public Participation (a SLAPP). We affirm because Walgreens's cross-complaint did not target protected activity by Nordhoff.

## FACTS AND PROCEEDINGS

In June 2007, appellant Nordhoff and respondent Walgreens entered into a lease for Walgreens to open a Walgreens store in Nordhoff's shopping center in Northridge. Under the lease, Walgreens's duties as tenant included making certain improvements to the property, including building out a 4,500 square foot "shop space" and painting the parking lot. The build-out was more costly and took longer than Walgreens expected, leading Walgreens to conclude that opening a store in the shopping center was not economically sensible. Accordingly, while continuing to make its rent payments under the lease, Walgreens exercised what it claimed was its right under paragraph 8(a)(i) of the lease. That paragraph stated, "Subject to any express limitation set forth in this release, [Walgreens] has the right (but not the obligation) to use the Leased Premises for any lawful purpose not in violation of applicable law, matters of record, or any then existing exclusive use restrictions [in or around the leasehold area]." Interpreting the paragraph as permitting, but not obligating, Walgreens to open a store, Walgreens instead investigated assigning the lease or subleasing the space.

Nordhoff refused to consent to an assignment or sublease. In a letter dated November 18, 2008, Nordhoff stated its objections. Nordhoff's letter opened by noting what Nordhoff perceived was Walgreens's failure to fulfill its lease obligations. The letter asserted that paragraph 14 of the lease required Walgreens to "open its fully staffed, fixturized, stocked store within 120 days after the Rent Commencement Date." The letter further asserted Walgreens could not sublease the space until Walgreens had opened a Walgreens's store in the shopping center, stating "Walgreens is not permitted to sublease the Leased Premises until such time as Walgreens has met its obligations under the Lease

2

and opened the Lease Premises as a Walgreens store." The letter "requested" that until Walgreens opened its store, Walgreens compensate Nordhoff for uncollected rent from prospective shopping center tenants who did not materialize because of Walgreens's failure to complete the build-out of the property. Nordhoff wrote that it "believes and requests that Walgreens should pay to Landlord [Nordhoff] rent on the Shop Space as the rental rate Landlord could otherwise achieve until such time as Walgreens completes Walgreens's obligations under the Lease and delivers the Shop Space to Landlord."

In 2009, Nordhoff was placed into receivership. In August 2010, the receiver filed a complaint against Walgreens that stated a single cause of action for specific performance. The receiver sought a judgment compelling Walgreens to finish the build out and open a store.

Walgreens thereafter sent a letter in April 2011 to Nordhoff stating that Nordhoff had breached the lease by anticipatorily repudiating Walgreens's right to sublet or assign the lease. According to Walgreens, the lease gave "Walgreens clear rights to sublease the leased premises even if it does not open a retail store." In support, Walgreens pointed to paragraph 8(a)(i) of the lease as its answer to Nordhoff's reliance on paragraph 14. Nordhoff had argued that paragraph 14 obligated Walgreens to open a store for at least one day: "Tenant shall open for business for at lease one full day, fully staffed, fixturized and stocked . . . on or before the date which is one hundred twenty (120) days following the Rent Commencement Date . . . ." But, Walgreens noted, paragraph 8(a)(i) conversely stated, "Subject to any express limitation set forth in this lease, [Walgreens] has the right (but not the obligation) to use the Leased Premises for any lawful purpose not in violation of applicable law, matters of record, or any then existing exclusive restrictions," which Walgreens interpreted as giving it the right to use the space for purposes other than a Walgreens store. From Nordhoff's refusal to consent to Walgreens subletting the space without first opening a Walgreens store, Walgreens claimed Nordhoff had committed an anticipatory breach of the lease. Walgreens concluded that Nordhoff's unambiguous refusal to permit a sublease "constitutes a present breach of contract and gives rise to an immediate right of action; in other words, it is not necessary for Walgreens to wait until it

3

has actually submitted a subtenant for consideration and [Nordhoff] refuses to tender performance.  [Nordhoff's] words leave no room for any other interpretation."  Walgreens demanded that Nordhoff cure its breach by unambiguously reaffirming Walgreens's right to sublease without first opening a store.  Walgreens ended by stating that "A failure to do so will result in a cross-complaint for damages in this action."

Nordhoff sold the shopping center in August 2012.  Two months later, the receiver assigned Nordhoff's claims against Walgreens back to Nordhoff.  Nordhoff filed a first amended complaint several months later in January 2013, which superseded the receiver's original complaint for specific performance.  Nordhoff's first amended complaint alleged that Walgreens's duties under the lease included operating a Walgreens store for at least one day in the shopping center and making certain improvements to the property, including building out a 4,500 square foot shop-space and painting the parking lot with striping for double-row parking.  Nordhoff claimed that Walgreens's breaches of the lease had reduced the rent that Nordhoff collected from other tenants in the shopping center.  Nordhoff also alleged that Walgreens's breaches had reduced the shopping center's sales price.  Based on Walgreens's acts, Nordhoff alleged a cause of action for breach of contract and sought recovery of its "actual, compensatory, and consequential damages."

Several days later, Walgreens filed its first amended cross-complaint.  In an introductory paragraph, Walgreens alleged "[t]his is a commercial lease case involving commercial space that Walgreens leases in Northridge.  In a heavily negotiated lease with a sophisticated landlord, Walgreens negotiated three key rights:  (1) Walgreens had the right but not the obligation to use the leased space; (2) in addition to not using the space at all, Walgreens could use the lease space in four other ways—including, but [sic] limited to, assigning the lease at any time to one of its non-retail businesses; and (3) Walgreens severely limited the remedies available at law to the landlord [Nordhoff] in the lease's remedies provision—thus eliminating consequential damages that [Nordhoff] seeks in its First Amended Complaint."  In support of its claims, Walgreens's first amended cross-complaint recited paragraph 8(a) of the lease, which Walgreens

4

interpreted as giving Walgreens the option, but not the obligation, to occupy the premises with a Walgreens store; paragraph 14, which Walgreens interpreted as permitting it to reassign the lease or sublet the space; and, paragraph 18, which Walgreens interpreted as prohibiting Nordhoff's recovery of consequential damages, such as reduced rent from other shopping center tenants or a lower sales price for the shopping center.[1] Relying on the foregoing lease provisions, Walgreens alleged a cause of action for breach of contract against Nordhoff based on Nordhoff's failing to cooperate with Walgreens in constructing the build-out; refusing to recognize Walgreens's right to occupy the premises; refusing to cooperate with Walgreens's attempt to assign the lease or sublet the property; and, demanding consequential damages. Walgreens also sought a declaratory judgment affirming its interpretation of its contractual rights under the lease.

Nordhoff specially moved to strike Walgreens's cause of action for breach of contract in Walgreens's first amended cross-complaint. Nordhoff argued Walgreen's first amended cross-complaint was a SLAPP because "[t]he conduct comprising the 'breaches' asserted in Walgreen's breach of contract claim is Nordhoff's act of filing its First Amended Complaint . . . ." According to Nordhoff, "Walgreens claims that Nordhoff breached the lease by: (1) refusing to recognize Walgreen's right not to use the premises; (2) failing to recognize Walgreen's assignment rights; and (3) seeking consequential damages. Each of these claims, however, is premised on the allegations in Nordhoff's First Amended Complaint. Therefore, the anti-SLAPP statute applies."

Walgreens opposed Nordhoff's special motion to strike. Walgreens argued that Nordhoff's complaint and Walgreens's cross-complaint involved litigating their conflicting interpretations of the lease. Nordhoff's complaint charged Walgreens with

---

[1]    In August 2013, the trial court entered summary judgment for Walgreens based on paragraph 18(a), which the court found barred Nordhoff's recovery of consequential damages. In the absence of a viable claim for damages, the court found Nordhoff could not state a cause of action for breach of the lease and therefore dismissed Nordhoff's first amended complaint. Nordhoff has appealed from the court's dismissal of its first amended complaint, but does not discuss that appeal in its briefs here.

the duty of opening a Walgreens store on the premises and making certain improvements to the property. Walgreen's cross-complaint, on the other hand, charged the reverse, denying Walgreens was obligated to open a store and alleging Nordhoff breached the lease by disregarding Walgreens's contractual rights under the lease.

The court denied Nordhoff's motion to strike. Its minute order stated: "The court finds that Nordhoff Way, LLC fails to sufficiently demonstrate that the 1st cause of action in [Walgreens'] First Amended Cross-complaint arises from [Nordhoff's] protected activity. The court finds that the allegations of this cause of action arise from conduct alleged to be a breach of the subject lease agreement. As such, Nordhoff Way, LLC has failed to demonstrate that the 1st cause of action falls within the purview of the anti-SLAPP statute." In discussing its ruling during the hearing on the motion, the court explained: "As far as this court is concerned, what we have here is a question as to whether or not we have a breach of contract or whether we have an anticipatory breach on the other side. We have a breach of contract case here is what we've got. How it turns out, I don't know. Got me. But that's all this is, a big one. But it's what it is."

Nordhoff appeals from the court's denial of its motion to strike. (Code Civ. Proc., § 425.16, subd. (i).)

## STANDARD OF REVIEW

We independently review denial of a special motion to strike a complaint or cross-complaint as a SLAPP. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269 fn. 3; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.)

## DISCUSSION

The anti-SLAPP statute (Code Civ. Proc., § 425.16) permits expedited trial court review of a complaint or cross-complaint before a lawsuit gets fully underway, and, when appropriate, dismissal of a complaint or cross-complaint targeting a litigation opponent's exercise of freedom of speech or petition. (*Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 872; *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 80.) The statute

6

provides a procedural remedy to dispose of causes of action that seek to punish a person for engaging in the valid exercise of constitutional rights. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.) Subdivision (b)(1) of the statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike . . . ." Subdivision (e) expands on the meaning of the phrase "in furtherance of" the right to speech or petition. It states:

> "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The moving party bears the burden of showing a complaint or, as here, a cross-complaint, arises from free speech or petitioning activity protected by the anti-SLAPP statute. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-90 (*Navellier*); *Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th at p. 1466.) The focus of analysis is whether the gravamen of the complaint is "based" on the protected activity. (*Scott v. Metabolife Intern. Inc.* (2004) 115 Cal.App.4th 404, 413-414.) That focus "disregard[s] the labeling of the claim [citation] and instead 'examine[s] the *principal thrust* or *gravamen* of a . . . cause of action to determine whether the anti-SLAPP statute applies' . . . . We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the . . . claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271-1272, italics in original.)

7

Here, Nordhoff contends Walgreens filed its first amended cross-complaint in response to Nordhoff's lawsuit against Walgreens in which Nordhoff had, among other things, sought consequential damages under its constitutionally protected right of petition. According to Nordhoff, Walgreens's first amended cross complaint was therefore a SLAPP. Nordhoff's brief succinctly summarizes its contention: "The anti-SLAPP statute applies where the conduct giving rise to the cause of action is protected activity. Here, [Nordhoff's] filing of a First Amended Complaint is protected activity, and thus [Walgreens'] breach of contract cause of action, based upon [Nordhoff's] First Amended Complaint, is improper under the anti-SLAPP statute."

Filing a lawsuit is protected activity under the constitutional right of petition. (*Navellier, supra,* 29 Cal.4th at p. 90.) But a distinction exists between the litigation process itself as protected activity, and the transaction or occurrence which spawned the litigation. The thrust of Walgreens's cause of action for breach of contract is that Nordhoff breached the lease by refusing to let Walgreens sublet the space or assign the lease without first opening a Walgreens retail store on the premises. Walgreens's first amended cross-complaint does not rest on Nordhoff having sued Walgreens (in other words, the "litigation process"); it rests instead on the same set of underlying circumstances alleged in Nordhoff's complaint – namely, whether Walgreens's failure to open a retail store did, or did not, breach the lease.[2] Because Nordhoff's protected activity – filing its lawsuit – is only incidental to Walgreens's cause of action for breach of contract, Walgreens's cross-complaint is not a SLAPP subject to a special motion to strike. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672; *Mann v. Quality Old Time Service, Inc.* (2004)

---

[2]     At least two decisions have observed that a compulsory cross-complaint is rarely a SLAPP. (See *Kajima Engineering and Const., Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 933-934 (*Kajima*); *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 651 disapproved on another point by *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68 fn.5 ["A compulsory cross-complaint on a 'related cause of action' against the plaintiff would rarely, if ever, qualify as a SLAPP suit arising from petition activity."].)

8

120 Cal.App.4th 90, 103; contrast *Navellier,* at p. 90 [defendant "is being sued because of the affirmative counterclaims he filed in federal court. In fact, but for [defendant's] federal lawsuit and [defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis."].)

The *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, is instructive. In that case, a former Alhambra city firefighter entered into a settlement agreement with the city of Alhambra. As part of the settlement, he agreed to be banned for five years from participating with the firefighter's union in activities that ordinarily would be lawful first amendment activities. During the five-year ban, he became involved in union activity against the city. The city sued him for breaching the settlement agreement. He moved to strike the city's lawsuit as a SLAPP, but the appellate court found the lawsuit was not a SLAPP. The appellate court explained, "The City did not sue appellant because he engaged in protected speech; the City sued him because it believed he breached a contract which prevented him from engaging in certain speech-related conduct and a dispute exists as to the scope and validity of that contract." (*Alhambra,* at pp. 1307-1308.) " 'That a cause of action arguably may have been "triggered" by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' " (*Id.* at p. 1307, italics in original; see also *Kajima, supra,* 95 Cal.App.4th at p. 933 [recognizing distinction under SLAPP between a lawsuit arising from the events underlying the complaint, which is not a SLAPP, compared to a lawsuit suing targeting protected activity of the *litigation process itself,* which is often a SLAPP].) Indeed, Nordhoff stipulated that Walgreen's cross-complaint arose from their lease when Nordhoff's receiver asked the court's leave for the receiver to restore control of Nordhoff's affairs to Nordhoff. The stipulation stated that the "action, including the complaint and cross-complaint filed therein, arise out of and relate to that certain written Amended and Restated Lease dated June 15, 2007 (the 'Lease') between Nordhoff Way, as landlord, and Walgreens, as tenant."

Walgreens's scattered references in its first amended cross-complaint to Nordhoff's seeming effrontery in trying to recover consequential damages despite their prohibition in the lease does not bring Walgreens's cross-complaint within the ambit of a SLAPP. The gravamen of Walgreen's cross-complaint rests on Nordhoff's purported breach of the lease. That the lease, according to Walgreens (and the trial court's entry of summary judgment, see footnote 1), prohibits consequential damages does not mean the thrust of Walgreen's cross-complaint rests on Nordhoff's attempt to recover consequential damages by litigation. An award of consequential damages may arguably breach the lease, but suing for breach of the lease does not make the suit a SLAPP; holding otherwise lets the tail wag the dog. (See *Raining Data Corp. v Barrenechea* (2009) 175 Cal.App.4th 1363, 1369 ["a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant."]; accord *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [in lawsuit alleging physical injury from defective dietary supplement commercially advertised by defendant, "commercial speech, although mentioned in the complaint, is largely unrelated to and entirely distinct from the wrongful, injury-causing conduct . . . on which Plaintiffs' claims are premised"].)

Finally, because we hold that Walgreens's cross-complaint is not a SLAPP, we need not address in our review of Nordhoff's *SLAPP motion* the probability of success of Walgreens's cross-complaint. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81; *City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1594.) "If the defendant does not demonstrate this initial prong [that the complaint is a SLAPP suit], the court should deny the anti-SLAPP motion and need not address the second step [of considering the complaint's probability of success]." (*Hylton v. Frank E. Rogozienski, Inc., supra,* 177 Cal.App.4th at p. 1271.) Thus we need not discuss Nordhoff's arguments about the merits of Walgreens's claims, and in particular Nordhoff's affirmative defense asserting the litigation privilege

10

## DISPOSITION

The trial court's order denying Nordhoff's special motion to strike Walgreens's first amended cross-complaint is affirmed.  Walgreens to recover its costs on appeal.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

11