Filed 8/7/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MISSION SPRINGS WATER DISTRICT,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KARI VERJIL, as Registrar of Voters, etc.,<br><br>    Defendant;<br><br>TIM RADIGAN BROPHY et al.,<br><br>    Real Parties in Interest and<br>    Appellants. | E055176<br><br>(Super.Ct.No. INC1105569)<br><br>**OPINION** |

APPEAL from the Superior Court of Riverside County.  Harold W. Hopp, Judge.

Affirmed.

Trevor A. Grimm, Jonathan M. Coupal, and Timothy A. Bittle for Defendants and Appellants.

Benbrook Law Group and Bradley A. Benbrook for Citizens in Charge as Amicus Curiae on behalf of Defendants and Appellants.

Slovak Baron & Empey, John O. Pinkney, and Charles L. Gallagher for Plaintiff and Respondent.

1

Colantuono & Levin and Michael G. Colantuono for Association of California Water Agencies, California Association of Sanitation Agencies, California State Association of Counties, and League of California Cities as Amici Curiae on behalf of Plaintiff and Respondent.

Mission Springs Water District (the District) increased its water and sewer rates. Initiatives to roll back the increases gathered enough signatures to qualify for the ballot. Rather than hold an election on the initiatives, however, the District filed this action against the proponents of the initiatives[1] (the Proponents) for a declaration that the initiatives are invalid.

The Proponents filed a "SLAPP motion" — i.e., a special motion to strike pursuant to Code of Civil Procedure section 425.16 (SLAPP Act). For this motion to be granted, the Proponents had to show that the action arose out of activity protected under the constitutional right of petition or free speech, and the District had to fail to show a probability of prevailing on its claims. The trial court denied the motion. It ruled that, under our decision in *City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582 (*Stansbury*), a declaratory relief action concerning the validity of an initiative does not arise out of protected activity by the initiative's proponents.

---

[1] The proponents of the initiatives, and hence the named real parties in interest, are Tim Radigan Brophy, Douglas Ward Sherman, Mary K. Stephens, and Steve Sobotta.

2

The Proponents ask us to reconsider *Stansbury*, asserting that it was poorly reasoned. We conclude that *Stansbury* was sound when decided; however, in light of the California Supreme Court's subsequent holding in *Perry v. Brown* (2011) 52 Cal.4th 1116 (*Perry*) that a preelection challenge to an initiative does implicate the personal constitutional rights of the initiative's proponents, *Stansbury* is no longer good law.

Nevertheless, we also conclude that the trial court properly denied the SLAPP motion, albeit for the wrong reason. The District showed a probability of prevailing on at least one of its theories — that the initiatives would set the District's rates too low to cover its costs, in violation of Water Code section 31007, and that the voters of a local district cannot override this statewide requirement. Hence, we will affirm.

I.

FACTUAL BACKGROUND

In 2010, the District adopted water and sewer rate increases effective January 1, 2011. According to the District, the rate increases are necessary if it is to remain solvent and to continue to carry out its vital public functions. According to the Proponents, however, the rate increases are unjustifiably high, due in part to employee salaries, health benefits, and pension benefits that are out of line with those prevailing in the private sector.

The Proponents circulated petitions for two initiatives (one for water rates and one for sewer rates) that would undo the rate increases and restore the preexisting rates. The initiatives also provided that, every fiscal year, "the District may adjust these . . . rates by

3

the percentage increase, if any, in the Consumer Price Index published by the federal Bureau of Labor Statistics for the region applicable to the . . . District."

In May 2011, defendant Kari Verjil, the registrar of voters, notified the District that the initiatives had received enough signatures. (See Elec. Code, §§ 9308, subd. (e), 9309, subd. (f).) At that point, the District was statutorily required to order that the initiatives be placed on the ballot at the next general election. (Elec. Code, §§ 1405, subd. (b), 9310, subd. (a)(2).)[2] The District, however, did not do so. Instead, it filed this action for declaratory relief.

II.

PROCEDURAL BACKGROUND

The District alleged that the initiatives were invalid because:

1.      While Proposition 218 permits reducing local district rates by initiative, the initiatives went beyond this authorization by also limiting future rate increases.

2.      The initiatives were void for vagueness because they did not specify which Consumer Price Index (CPI) was to be used for future rate increases.

3.      The initiatives would cause the District to become insolvent.

---

[2]      The petitions requested that the initiatives be submitted to the voters "at a special election . . . or the . . . next regular election . . . ." This wording was probably insufficient to *require* a special election. (See Elec. Code, § 9310, subd. (a).) According to the Proponents themselves, the initiatives should have gone on the ballot in the next general election, on November 8, 2011.

4

4.      The initiatives, rather than enacting legislation directly, required the District to enact legislation.

5.      The initiatives unconstitutionally impaired the obligation of contract.

The Proponents filed a demurrer.  In it, they argued that the initiatives were not invalid on any of the five theories that the District was asserting.

Meanwhile, the Proponents also filed a SLAPP motion.  They argued that the action arose from the protected activity of exercising their right of petition.  They also argued that the District was not likely to prevail on the merits.

The trial court held a combined hearing on both the demurrer and the SLAPP motion.  After hearing argument, it denied the SLAPP motion.  It reasoned that, under *Stansbury*, the action did not arise out of any protected activity.  It therefore did not reach the question of whether the District had shown a probability of prevailing on the merits. (See Code Civ. Proc., § 425.16, subd. (b)(1).)

At the same time, however, it overruled the demurrer.  It ruled that at least one of the District's theories — that the initiatives unconstitutionally limited future rate increases — appeared to be meritorious.

5

# III.

## THE DISTRICT'S CLAIM DOES ARISE OUT OF PROTECTED ACTIVITY, BUT THE DISTRICT SHOWED A PROBABILITY OF PREVAILING

### A.     *General SLAPP Act Principles*.

The SLAPP Act states:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (Code Civ. Proc., § 425.16, subd. (b)(1).)

"The analysis of [a SLAPP] motion thus involves two steps.  'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity.  [Citation.]  If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'  [Citation.]"  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.)

"We review an order granting or denying a motion to strike under section 425.16 de novo.  [Citation.]"  (*Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820.)

B.     *The "Arising From" Requirement.*

The Proponents contend that this action does arise out of protected activity.  They appear to concede that, under *Stansbury*, it does not, but they urge us either to "revisit" *Stansbury* (capitalization omitted) or to carve out an exception to it.

"[T]o meet its burden 'the defendant . . . must present a prima facie showing that the plaintiff's causes of action arise from acts of the defendant taken to further the defendant's rights of free speech or petition in connection with a public issue. . . .' [Citation.]"  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 314 [discussing & quoting *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365]; see also *Flatley*, at pp. 316-318 [approving *Paul for Council*].)

"[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.]  Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.]  In the anti-SLAPP context, the critical consideration is whether the cause of action is *based* on the defendant's protected free speech or petitioning activity."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)  "The anti-SLAPP statute's definitional focus is not on the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability — and whether that activity constitutes protected speech or petitioning."  (*Id*. at p. 92.)

7

To the best of our knowledge, this standard has been applied to actions challenging initiatives only twice.

First, in *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43 (*Stewart*), voters in Pasadena passed an initiative that prohibited city officials from accepting gifts and campaign contributions from recipients of certain public benefits. (*Id*. at pp. 50-51, 54.) The city, however, claimed that the initiative was unconstitutional; it refused to authenticate, certify and file copies of the initiative, which prevented the initiative from going into effect. (*Id*. at p. 54.)

The Foundation for Taxpayer and Consumer Rights (FTCR), which had sponsored the initiative, intervened in an action to compel the city to authenticate, certify, and file copies of the initiative. (*Stewart*, *supra*, 126 Cal.App.4th at p. 54.) The city responded by cross-complaining against FTCR for declaratory relief, asserting that the initiative was unconstitutional. FTCR then filed a SLAPP motion. (*Id*. at p. 55.) The trial court denied the SLAPP motion because it accepted the city's argument that the "cross-action was not motivated by a desire to punish FTCR or chill the exercise of its First Amendment rights. Rather, the goal was only to obtain a judicial determination that the city was not required to perform any of the ministerial duties necessary to certify the election results . . . because the Initiative was unconstitutional." (*Id*. at pp. 71-72; see also *id*. at pp. 55-56.)

The appellate court held that this was error, and the cross-complaint did arise out of protected activity. Preliminarily, it rejected the city's argument that the cross-complaint did not arise out of protected activity because it arose out of the passage of the

8

initiative.  (*Stewart*, *supra*, 126 Cal.App.4th at pp. 72-73.)  It explained, "[*E*]*ven if we agreed* that the act which led to the filing of the cross-complaint against FTCR was the voters' approval of the FTCR-sponsored Initiative, that approval would represent, among other things, a paradigmatic exercise of FTCR's and the voters' engagement in 'conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' [Citations.]  Advocacy for an [i]nitiative and adoption of the measure are, without question, a fundamental exercise of the First Amendment right to petition."  (*Id*. at p. 73, italics added.)

The court went on to hold, however, that the cross-complaint *actually* arose out of FTCR's acts of intervening in the action and demanding that the city perform its ministerial duties of certifying and filing the initiative.  (*Stewart*, *supra*, 126 Cal.App.4th at pp. 73-75.)  The court found that the "gravamen" of the cross-complaint was not the constitutionality of the initiative, but rather the dispute over the city's obligation to perform its ministerial duties.  (*Id*. at p. 74.)

The court concluded:  "FTCR was sued because it had the temerity to file a complaint-in-intervention to force Pasadena to put the [i]nitiative into effect, *and* because it sponsored the [i]nitiative and supported its constitutionality, *all of which* are clearly protected activities."  (*Stewart*, *supra*, 126 Cal.App.4th at p. 75, italics added.)

Thereafter, in *Stansbury*, the defendants were the proponents of an initiative that would have amended the eminent domain provisions of the Riverside city charter.

9

(*Stansbury*, *supra*, 155 Cal.App.4th at p. 1585.)  The city filed a declaratory relief action against them, seeking a declaration that the proposed initiative was invalid and did not have to be placed on the ballot.  (*Id*. at pp. 1586-1586.)  The proponents filed a SLAPP motion, which the trial court granted.  (*Id*. at p. 1587.)

We held that this was error, because the complaint did not arise out of any protected activity.  We relied on *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, which had held that a city's declaratory relief action regarding the validity of a rent control ordinance did not arise out of protected speech.  We concluded that, in the case before us, "[b]y its declaratory relief action, the City was simply asking for guidance as to the constitutionality of the proposed initiative.  Indeed, the City did nothing to limit respondents' activities in connection with the initiative, nor did the City, by its action, otherwise impact respondents' First Amendment rights.  Moreover, it was proper for the City to initiate its declaratory relief action as a means of disputing, in a preelection challenge, the validity of the initiative.  [Citations.]" (*Stansbury*, *supra*, 155 Cal.App.4th at pp. 1590-1591.)

As we noted, "[u]nderlying [the] position [of one of the proponents] is the faulty premise that his right to petition is not complete and thus cannot be challenged — until after the proposed initiative is placed on the ballot and the electorate determines whether it should pass." (*Stansbury*, *supra*, 155 Cal.App.4th at p. 1591; see also *id*. at p. 1592.) We responded that this "overlooks the fact there is no constitutional right to place an *invalid* initiative on the ballot.  [Citation.]  Moreover, [it] ignores entirely the body of law

10

which recognizes preelection challenges to initiative measures." (*Id*. at p. 1592.) We concluded that "if the trial court's ruling is allowed to stand, no one could ever challenge an initiative's constitutionality prior to the election, which is contrary to law." (*Id*. at p. 1585.)

We distinguished *Stewart*, stating that "[t]he cross-action [in *Stewart*] involved not the constitutionality of the initiative, as in our case, but rather, the dispute over the city's . . . duty to perform certain ministerial acts . . . . [Citation.] Thus, because the cross-action 'arose from' FTCR's protected act of filing litigation, it was properly subject to a motion to strike under section 425.16." (*Stansbury*, *supra*, 155 Cal.App.4th at p. 1593.)

The Proponents argue that *Stewart* and *Stansbury* are "irreconcilable" and that *Stansbury* was "wrongly decided . . . ." The District, on the other hand, argues that *Stansbury* is controlling and that *Stewart* is distinguishable on the grounds we stated in *Stansbury*.

The correctness of *Stansbury* turns on whether a declaratory relief action challenging the validity of an initiative arises out of the proponents' exercise of their right of petition. We indicated that the proponents' exercise of their right to petition was "complete" once they had done everything necessary to qualify the initiative for the ballot; hence, a challenge to actually placing the initiative on the ballot did not implicate the proponents' right of petition. (See *Stansbury*, *supra*, 15 Cal.App.4th at p. 1591.) In 2007, when *Stansbury* was decided, there was little authority on this point. There was

11

*Stewart*, but it was not entirely clear; it could be read broadly, as the Proponents do, or narrowly, as the District does and as we ultimately did in *Stansbury*.

In 2011, however, the California Supreme Court confronted the issue directly in *Perry*. There, the Ninth Circuit had asked our Supreme Court to decide "'[w]hether . . . the official proponents of an initiative measure possess either a particularized interest in the initiative's validity or the authority to assert the State's interest in the initiative's validity, which would enable them to defend the constitutionality of the initiative upon its adoption or appeal a judgment invalidating the initiative, when the public officials charged with that duty refuse to do so.'" (*Perry*, *supra*, 52 Cal.4th at p. 1124.)

The Supreme Court began by observing, "[I]n the past official proponents of initiative measures in California have uniformly been permitted to participate as parties — either as interveners or as real parties in interest — in numerous lawsuits in California courts challenging the validity of the initiative measure the proponents sponsored. . . . This court, however, has not previously had occasion fully to explain the basis upon which an official initiative proponent's ability to participate as a party in such litigation rests." (*Perry*, *supra*, 52 Cal.4th at p. 1125.)

The court stated: "In the preelection setting, when a proposed initiative measure has not yet been adopted as state law, the official proponents of an initiative measure who intervene or appear as real parties in interest are properly viewed as asserting their own personal rights and interests — under article II, section 8 of the California Constitution and the California statutes relating to initiative proponents — to propose an initiative

12

measure and have the measure submitted to the voters for approval or rejection.  *In preelection cases, the official initiative proponents possess a distinct interest in defending the proposed initiative because they are acting to vindicate their own rights under the relevant California constitutional and statutory provisions to have their proposed measure* — a measure they have submitted to the Attorney General, have circulated for signature, and have the exclusive right to submit to the Secretary of State after signatures have been collected — *put to a vote of the people*."  (*Perry*, *supra*, 52 Cal.4th at p. 1146, italics added.)

By contrast, the court noted, in postelection litigation, the existence of a personal interest on the part of the official proponents is "arguably less clear . . . ."  (*Perry*, *supra*, 52 Cal.4th at p. 1147.)  It then held that, "at least in those circumstances in which the government officials who ordinarily defend a challenged statute or constitutional amendment have declined to provide such a defense or to appeal a lower court decision striking down the measure, the authority of the official proponents of the initiative to assert the state's interest in the validity of the initiative is properly understood as arising out of article II, section 8 of the California Constitution and the provisions of the Elections Code relating to the role of initiative proponents."  (*Id*. at p. 1151.)

When this court decided *Stansbury*, *Perry* had not yet been decided.  Indeed, as the Supreme Court itself noted, it had not yet articulated precisely why the proponent of an initiative has standing to defend its validity.  (*Perry*, *supra*, 52 Cal.4th at p. 1125.)  Accordingly, we suggested that a proponent's exercise of the right to petition is

"complete" once the proposed initiative has qualified procedurally to be placed on the ballot; we indicated that, in a preelection challenge to the validity of the initiative, this right simply is not involved. (*Stansbury*, *supra*, 155 Cal.App.4th at p. 1591.) Under *Perry*, however — and in particular under the italicized language quoted above — this view is no longer tenable. Rather, *Perry* now stands for the proposition that, when the proponent of an initiative is a party to preelection litigation challenging the initiative, the litigation arises out of the proponent's exercise of the constitutional right of petition. This is true even when the plaintiff is a governmental entity requesting guidance regarding the constitutionality of the proposed initiative. In *Stansbury*, we reasoned essentially that a preelection declaratory relief action does not "limit [the proponents'] activities in connection with the initiative, nor . . . otherwise impact [the proponents'] First Amendment rights." (*Stansbury*, *supra*, 155 Cal.App.4th at p. 1591.) However, we now know from *Perry* that this is incorrect. We also believed that *Cotati* was controlling, even though it dealt with an ordinance rather than an initiative. (*Stansbury*, at p. 1591.) Once again, however, *Perry* teaches us that initiative proponents have a constitutional stake in preelection litigation over their initiative that is distinct from the general public's stake in postenactment litigation over a statute.

Moreover, as the court in *Perry* noted, there is an inherent conflict of interest between the proponent of an initiative and the affected governmental entity. "[T]he initiative process is specifically intended to enable the people . . . to enact statutes when current government officials have declined to adopt (and often have publicly opposed) the

14

measure in question . . . ." (*Perry*, *supra*, 52 Cal.4th at p. 1125.) Whenever the affected governmental entity files a declaratory relief action in which it seeks to keep an initiative off the ballot, the action arises out of the proponent's right of petition.[3]

We adhere to the concern that we expressed in *Stansbury* about unduly inhibiting preelection challenges to initiatives. However, our statement that "if the trial court's ruling is allowed to stand, no one could ever challenge an initiative's constitutionality prior to the election" (*Stansbury*, *supra*, 155 Cal.App.4th at p. 1585) must be viewed in context. In *Stansbury*, one of the proponents was arguing that the right to petition prohibits *any* preelection challenge to an initiative. (*Id*. at p. 1591.) The trial court had agreed, stating that "'to have a declaratory relief action before the initiative is ever enacted is not something the Court should consider, because the initiative may not pass.'"

---

[3]    One of the Proponents' objections to *Stansbury* is that supposedly it allows a local governmental entity to evade its mandatory duty to place an initiative on the ballot by filing a declaratory relief action instead. They claim that one of the issues in this appeal is whether a local governmental entity has a mandatory duty to place a procedurally qualified initiative on the ballot, even when it claims that the initiative is unconstitutional or invalid.

The filing of this declaratory relief action, however, is not what kept the initiatives off the ballot. The District did not request or obtain any provisional relief from the trial court; it simply decided, on its own, not to order an election. Filing the action does enhance the District's appearance of good faith — it can claim it is merely awaiting guidance from the court. However, the District could have refused to place the initiative on the ballot without filing any action at all.

We are somewhat surprised that the Proponents have not cross-complained for any coercive relief, such as a writ or a preliminary injunction, to compel a prompt election on the initiatives. Absent a request for such relief, however, the issue of the existence or scope of the District's mandatory duty simply is not before us.

15

(*Id*. at p. 1594, fn. 10.)  It was *this* ruling that would have meant that no one could ever bring a preelection challenge.

By contrast, holding that a preelection declaratory relief action regarding the validity of an initiative arises out of the proponent's protected activity does not mean that no one could ever bring a preelection challenge.  Such a holding merely addresses the first prong of the analysis of a SLAPP motion.  It would still be open to the challenger to show that, under the second prong, it has a probability of prevailing.  As we will discuss in more detail in part III.C., *post*, this is not a particularly high hurdle.  Thus, such a holding would simply mean that no one could bring a *meritless* preelection challenge.

Indeed, it is difficult to underestimate the likely impact of allowing SLAPP motions in declaratory relief actions challenging the validity of initiatives.  Admittedly, a SLAPP motion requires the plaintiff to show that it has a probability of prevailing even before it has obtained any discovery.  A preelection challenge to the validity of an initiative, however, is likely to present primarily issues of law.  (See *Senate of State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1153-1154 and cases cited [appropriate preelection claims include claim that initiative is not legislative in character, amounts to a constitutional revision rather than amendment, fails to contain accurate short title, or violates single-subject rule].)

Also, to the extent that the preelection challenge is brought by the affected governmental entity, it is likely that the entity already has much of the relevant factual information.  Here, for example, the District claims that the initiatives would cause it to

become insolvent.  The information relevant to this claim, including information about the District's revenues, expenses, and rate-setting practices, is in the District's own hands. It does not need discovery on this issue.

The only other significant effect of allowing SLAPP motions is that, if the motion is granted, the plaintiff will have to pay the defendant's attorney fees.  (Code Civ. Proc., § 425.16, subd. (c)(1).)  Whenever the plaintiff is the affected governmental entity, these fees must come, directly or indirectly, out of the pocket of the public.  Once again, however, for fees to be awarded, the action must be meritless.  We would hope that local governmental entities — which have ready access to the advice of counsel — will not bring so many meritless challenges to initiatives as drain the public fisc.

"The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights.  [Citation.]"  (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1165.)  When a governmental entity brings a meritless preelection challenge to the validity of an initiative, these legislative policies apply full force.

Finally, the District argues that the Proponents "effectively ask this Court to dispense with the first prong of the anti-SLAPP analysis in any and all challenges to the constitutionality of proposed initiatives."  Not at all.  We merely conclude that the first prong is satisfied (at least when a proponent of the initiative is a party).

C.    *Probability of Prevailing.*

We therefore turn to the second prong of the analysis — whether the District has demonstrated a probability of prevailing on its claim.

"[A] SLAPP motion, like a summary judgment motion, *pierces* the pleadings and requires an evidentiary showing." (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073.) "'[A]lthough by its terms [Code of Civil Procedure] section 425.16, subdivision (b)(1) calls upon a court to determine whether "the plaintiff has established that there is a *probability* that the plaintiff will prevail on the claim" . . . , past cases interpreting this provision establish that the Legislature did not intend that a court, in ruling on a motion to strike under this statute, would weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim, but rather intended to establish a summary-judgment-like procedure available at an early stage of litigation that poses a potential chilling effect on speech-related activities.' [Citation.] '[T]he court's responsibility is to accept as true the evidence favorable to the plaintiff . . . .' [Citation.] '[T]he defendant's evidence is considered with a view toward whether it defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element.' [Citation.]" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215.)

"[A]n anti-SLAPP motion may lie against a complaint for declaratory relief [citation] . . . ." (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 665-666.)  Moreover, "the mere existence of a controversy is insufficient to

overcome an anti-SLAPP motion against a claim for declaratory relief.  [¶]  To defeat an anti-SLAPP motion, the plaintiff must also make a prima facie evidentiary showing to sustain a judgment in the plaintiff's favor.  [Citation.]  In other words, for a declaratory relief action to survive an anti-SLAPP motion, the plaintiff must introduce substantial evidence that would support a judgment of relief made in plaintiff's favor." (*Id*. at p. 670; see also *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, 272 [plaintiff's evidence failed to show probability of prevailing on its declaratory relief claim].)

1. *The propriety of a declaratory relief action.*

Preliminarily, the Proponents argue that the District cannot bring a declaratory relief action at all because Elections Code section 9380 provides the exclusive procedure for challenging the validity of a local district initiative.  That section provides that, once the text of a proposed ordinance and the arguments for and against it have been submitted (see Elec. Code, §§ 9312, 9315, 9317), there is a 10-day window during which "any voter of the jurisdiction in which the election is being held, or the elections official, himself or herself, seek a writ of mandate or an injunction requiring any material to be amended or deleted." (Elec. Code, § 9380, subd. (b)(1).)  "A peremptory writ of mandate or an injunction shall be issued only upon clear and convincing proof that the material in question is false, misleading, or inconsistent with this chapter . . . ." (*Id*., subd. (b)(2).)

As the District notes, Elections Code section 9380 is not an appropriate vehicle for its particular challenge.  An action under Elections Code section 9380 can be brought only by a voter or by the elections official; the District is neither.  Moreover, the District

19

is not arguing that the ballot material regarding the initiatives is false, misleading, or inconsistent with the Elections Code; it is arguing that the initiatives themselves are unconstitutional and invalid. It has been held that Elections Code section 9380 and similar provisions (see also Elec. Code, §§ 9092, 9190, subd. (b), 9295, subd. (b), 9509, subd. (b), 13282, 13313) are "not the sole avenue of relief for a party who seeks to demonstrate that a proposed ballot measure is beyond the powers of the voters to adopt. Rather, such a question of law may be raised by a nonvoter seeking declaratory relief under [Code of Civil Procedure] section 1060 as to the respective rights and duties of the parties and the construction of a written instrument, where the validity of a ballot measure is concerned. [Citation.]" (*City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384, 398.)

        2.     *Proposition 218 and <u>Bighorn</u>*.

The District contends that the portion of the initiatives allowing future rate increases indexed to the CPI is invalid under Proposition 218, as construed in *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205 (*Bighorn*).

"In 1996, California voters adopted Proposition 218, known as the Right to Vote on Taxes Act, which added articles XIII C and XIII D to the California Constitution. [Citation.]" (*Beutz v. County of Riverside* (2010) 184 Cal.App.4th 1516, 1520 [Fourth Dist., Div. Two].) The principal purpose of Proposition 218 was to close a loophole in Proposition 13, which limited the ability of local governments to impose taxes, by similarly limiting their ability to impose assessments, fees, and charges. (*Beutz*, at p. 1520.)

20

The particular provision of Proposition 218 that is relevant here is section 3 of article XIII C of the California Constitution (article XIII C), which states: "Notwithstanding any other provision of this Constitution, including, but not limited to, Sections 8 and 9 of Article II, the initiative power shall not be prohibited or otherwise limited in matters of reducing or repealing any local tax, assessment, fee or charge. The power of initiative to affect local taxes, assessments, fees and charges shall be applicable to all local governments . . . ."

The California Supreme Court construed article XIII C, section 3 in *Bighorn*. There, one E.W. Kelley qualified an initiative for the ballot that (1) reduced existing water rates and (2) required the water district to obtain voter approval before increasing water rates or imposing any new water rates. (*Bighorn*, *supra*, 39 Cal.4th at pp. 209-210.)

The Supreme Court held that, to the extent that the initiative reduced existing water rates, it was "expressly authorize[d]" by article XIII C, section 3. (*Bighorn*, *supra*, 39 Cal.4th at p. 216.) The water district had challenged the initiative under what the Supreme Court called "the exclusive delegation rule" (*id*. at p. 219); it argued that the Legislature had granted the exclusive authority to set water rates to the water district's board of directors, and thus had implicitly precluded the use of the initiative power to set water rates. (*Id*. at pp. 217, 219.) The court held, however, that article XIII C, section 3 prevailed over the exclusive delegation rule: "The Legislature is bound by the state Constitution . . . , and the evident purpose of article XIII C is to extend the local initiative power to fees and charges imposed by local public agencies. . . . [T]he Legislature's

21

authority in enacting the statutes under which the Agency operates must in this instance yield to constitutional command." (*Bighorn*, at p. 217.)

However, the Supreme Court also held that to the extent the initiative sought to "impose voter-approval requirements for future increases in fees or charges," it was *not* authorized by article XIII C, section 3. (*Bighorn*, *supra*, 39 Cal.4th at p. 218.) It added: "*Kelley apparently concedes that in the absence of the authority granted by section 3 of article XIII C, the exclusive delegation rule [citations] bars initiative measures that infringe on the power of the Agency's governing board to set its water delivery rate and charges.* Accordingly, . . . Kelley's initiative is invalid insofar as it seeks to impose a voter-approval requirement on future actions by the [water district]'s board of directors to increase the existing water rate and other charges or to impose new charges." (*Id*. at p. 219, italics added.)

Finally, the court summarized its holding as follows: "We have concluded that under section 3 of . . . article XIII C, local voters by initiative may reduce a public agency's water rate and other delivery charges, but also that section 3 of article XIII C does not authorize an initiative to impose a requirement of voter preapproval for future rate increases or new charges for water delivery. In other words, by exercising the initiative power voters may decrease a public water agency's fees and charges for water service, but the agency's governing board may then raise other fees or impose new fees without prior voter approval. Although this power-sharing arrangement has the potential for conflict, we must presume that both sides will act reasonably and in good faith, and

22

that the political process will eventually lead to compromises that are mutually acceptable and both financially and legally sound.  [Citation.]  We presume local voters will give appropriate consideration and deference to a governing board's judgments about the rate structure needed to ensure a public water agency's fiscal solvency, and we assume the board, whose members are elected [citation], will give appropriate consideration and deference to the voters' expressed wishes for affordable water service." (*Bighorn*, *supra*, 39 Cal.4th at p. 220.)

The District argues that the portion of the initiatives here that allows future rate increases indexed to the CPI is analogous to the portion of the initiative in *Bighorn* that required voter approval for future rate increases.  The District concludes that, under *Bighorn*, this portion of the initiatives is unauthorized under Proposition 218 and hence invalid.  The trial court agreed (at least in connection with the demurrer; it did not reach this argument in connection with the SLAPP motion).

The problem with this contention is that *Bighorn* held this portion of the initiative to be invalid *only* because there the proponent *conceded* that it violated the "exclusive delegation rule." (*Bighorn*, *supra*, 39 Cal.4th at p. 219.)  Here, the Proponents have made no such concession.  Thus, we must determine whether the exclusive delegation rule applies.

Under the exclusive delegation rule, if the Legislature statutorily delegates the exercise of certain authority exclusively to the governing body of a local governmental entity, that implicitly precludes the exercise of the same authority by initiative.  (*DeVita v.*

23

*County of Napa* (1995) 9 Cal.4th 763, 776; see also *Bighorn*, *supra*, 39 Cal.4th at p. 219 [citing *DeVita*].)

The Supreme Court has recognized "certain guidelines" for determining whether the exclusive delegation rule applies. (*DeVita v. County of Napa*, *supra*, 9 Cal.4th at p. 776.) "The paramount factors . . . are: (1) statutory language, with reference to 'legislative body' or 'governing body' deserving of a weak inference that the Legislature intended to restrict the initiative and referendum power, and reference to 'city council' and/or 'board of supervisors' deserving of a stronger one [citation]; [and] (2) the question whether the subject at issue was a matter of 'statewide concern' or a 'municipal affair,' with the former indicating a greater probability of intent to bar initiative and referendum [citation]." (*Ibid.*)

For purposes of the exclusive delegation rule, the water district in *Bighorn* was significantly different from the water district here. There, the water district was a special district; it operated under the Bighorn Mountains Water Agency Law, an uncodified act. (*Bighorn*, *supra*, 39 Cal.4th at p. 209.) The statute that assertedly delegated exclusive authority provided: "'The *board of directors*, so far as practicable, shall fix such rate or rates for water in the agency . . . as will result in revenues which will pay the operating expenses of the agency, . . . provide for repairs and depreciation of works, provide a reasonable surplus for improvements, extensions, and enlargements, pay the interest on any bonded debt, and provide a sinking or other fund for the payment of the principal of

24

such debt as it may become due.'" (*Id.* at p. 210, italics added, quoting Stats. 1969, ch. 1175, § 25, pp. 2285–2286.)

Here, by contrast, the District is a county water district. The only statute the District cites as delegating exclusive authority is Water Code section 31007, which provides, as pertinent here:

"The rates and charges to be collected by [a county water] district shall be so fixed as to yield an amount sufficient to do each of the following:

"(a) Pay the operating expenses of the district.

"(b) Provide for repairs and depreciation of works owned or operated by the district.

"(c) Pay the interest on any bonded debt.

"(d) So far as possible, provide a fund for the payment of the principal of the bonded debt as it becomes due." (See also Wat. Code, §§ 30010, 30013 [defining "district," as used in Wat. Code, §§ 30000-33901, as county water district].)

Thus, unlike the statute at issue in *Bighorn*, Water Code section 31007 does not refer to the governing body of the water district at all. Instead, using the passive voice, it merely directs that rates and charges "shall be . . . fixed," without specifying how or by whom. Thus, there is no basis for even a "weak inference" (*DeVita v. County of Napa*, *supra*, 9 Cal.4th at p. 776) that the Legislature intended to preclude the voters from using the initiative power to fix rates and charges.

The District argues that Water Code section 31007 relates to "public health and water quality," which are "matters of statewide concern." Actually, it relates more narrowly to a county water district's budgeting practices and ability to repay its bonds; arguably, these are predominantly local concerns. In any event, "[a] state statutory scheme does not restrict or preempt the power of an initiative simply because the initiative includes some elements of statewide concern. [Citation.]" (*Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1257; accord, *DeVita v. County of Napa*, *supra*, 9 Cal.4th at pp. 780-781.) Rather, there must be "'a clear showing of the Legislature's intent'" to exclude the operation of the initiative power. (*DeVita*, at p. 775.) There is no such showing in the text of Water Code section 31007.

We therefore conclude that the District has failed to show a probability of prevailing on its claim that the initiatives are invalid under *Bighorn*. We need not decide whether article XIII C, section 3 authorizes the portion of the initiatives that allows future rate increases indexed to the CPI. Even assuming it does not, the general initiative power does;[4] and the Legislature has not manifested any intent, in accordance with the exclusive delegation rule, to withdraw this power.

---

[4] The Proponents contend that the voters' power to enact a local water district initiative has both constitutional and statutory sources. They cite the California Constitution, article II, section 8, article II, section 11, and article IV, section 1. They also cite Elections Code sections 9300 et seq. and Water Code section 30830.

*[footnote continued on next page]*

26

### 3. *Vagueness of the CPI indexing provision.*

The District contends that the initiatives are void for vagueness because they do not specify which CPI is to be used as the index for future rate increases.

"The underlying concern of a vagueness challenge 'is the core due process requirement of adequate *notice*.' [Citation.]" (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1180.) "Statutes or ordinances that are not clear as to the regulated conduct are void for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms. [Citation.]" (*Concerned Dog Owners of California v. City of Los Angeles* (2011) 194 Cal.App.4th 1219, 1231.) Here, because the initiatives are not penal and do not restrict speech, vagueness review is

---

*[footnote continued from previous page]*

We do not agree that there is a general state constitutional right (i.e., other than under article XIII C, section 3) to enact a local district initiative. Article II, section 8 and article IV, section 1 concern the power to adopt statewide statutes by initiative. Similarly, article II, section 11 concerns the power to adopt county and city initiatives. None of these provisions grant the power to enact local district initiatives. (*Board of Education v. Superior Court* (1979) 93 Cal.App.3d 578, 583 [school district].)

We do agree, however, that the Legislature has *statutorily* granted the power of initiative to the voters of a local water district. Elections Code section 9300 provides that, subject to exceptions not applicable here, "ordinances may be enacted by any district pursuant to this article . . . ." Elections Code sections 9301-9323 then go on to prescribe the procedure for adopting a district ordinance by initiative. Moreover, specifically with regard to water districts, Water Code section 30830 provides that "[o]rdinances may be passed by voters in accordance with Article 1 (commencing with Section 9100) of Chapter 2 of Division 9 of the Elections Code."

at its lowest ebb, assuming it applies at all.  (See *Duffy v. State Bd. of Equalization* (1984) 152 Cal.App.3d 1156, 1171-1172 [questioning whether vagueness review even applies to nonpenal, nonspeech-related statutes].)

"When assessing a facial challenge to a statute on vagueness grounds, courts should where possible construe the statute in favor of its validity and give it a reasonable and practical construction in accordance with the probable intent of the Legislature; a statute will not be declared void for vagueness or uncertainty if any reasonable and practical construction can be given its language.  [Citation.]  . . .  [A] statute not sufficiently clear may be made more precise by judicial construction and application of the statute in conformity with the legislative objective.  [Citation.]"  (*Schweitzer v. Westminster Investments, Inc.* (2007) 157 Cal.App.4th 1195, 1206.)

We note that the California Constitution itself, as well as a host of California statutes, all refer to "the consumer price index" without specifying any particular one. (E.g., Cal. Const., art. XIII A, § 2(b), Code Civ. Proc., § 726, subd. (g), Ed. Code, § 17457.5, subd. (d), Gov. Code, § 66427.5, subd. (f)(2), Health & Saf. Code, § 44060, subd. (c)(3).)  We would not lightly cast doubt on the validity of all of these statutes.

The initiatives' reference to "the Consumer Price Index" is indeed ambiguous. The CPI is not a single number, but rather "a large family of indexes with thousands of indexes published each month."

(<http://www.bls.gov/opub/focus/volume1_number15/cpi_1_15.htm>, as of July 16, 2013.)[5]

"Where more than one statutory construction is arguably possible, our 'policy has long been to favor the construction that leads to the more reasonable result.' [Citation.] . . . Thus, our task is to select the construction that comports most closely with the [drafters'] apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results. [Citations.]" (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 388.)

The leading subgroups of the CPI are the CPI-U (for urban consumers), C-CPI-U (chained, for urban consumers), and CPI-W (for urban wage earners and clerical workers). (<www.bls.gov/cpi/cpisuptn.htm>, as of July 16, 2013.)

The CPI-W excludes professional, managerial, and technical workers; the self-employed; short-term workers; the unemployed; and retirees and others not in the labor force. (<http://www.bls.gov/news.release/cpi.nr0.htm>, as of July 16, 2013.) As these individuals make up a significant portion of the population that must pay for water, it would not make sense to use the CPI-W for water rate calculations.

---

[5] We take judicial notice of the online materials cited in this section. (See Evid. Code, §§ 452, subd. (h), 459.) By means of our tentative opinion (see AA. App., Fourth Dist., Div. Two, Internal Operating Practices & Proc., VIII, Tentative opinions and oral argument), we gave the parties notice of our intent to do so. (Evid. Code, § 455, subd. (a).)

The C-CPI-U, unlike the CPI-U, assumes that, as prices increase, consumers will substitute cheaper goods — for example, "[i]f the price of pork increases while the price of beef does not, consumers might shift away from pork to beef." (<http://www.bls.gov/cpi/cpisupqa.htm>, as of July 16, 2013.) However, the C-CPI-U has not been generally adopted as an indexing mechanism. For example, according to the Bureau of Labor Statistics, "The C-CPI-U to our knowledge currently is not used in any federal legislation as an adjustment mechanism." (*Ibid*.) By this process of elimination, it seems that the drafters of the initiatives must have had in mind the CPI-U.

The only other question is what mix of products the drafters intended the CPI to be based on. There is a CPI for all items. This is also broken down into a CPI for food, for energy, for all items other than food and energy, and for services. Each of these is broken down still further; for example, the food CPI is broken down by food at home and food away from home. (<http://www.bls.gov/news.release/cpi.nr0.htm>, as of July 16, 2013.) The all-items CPI is the one most widely reported. Moreover, from the very fact that the drafters did not specify a product mix, we conclude they had in mind the CPI for all items. We therefore conclude that the initiatives refer to the CPI-U for all items for the Los Angeles-Orange County-Riverside geographical area. (See <http://www.bls.gov/cpi/cpid1303.pdf>, Table 16, p. 49, as of July 16, 2013.)

We emphasize that we are resolving this issue for purposes of the SLAPP motion, not necessarily for the litigation as a whole. The key point is that, on this record, a court can readily determine which CPI was intended, and therefore the initiatives are not

30

unconstitutionally vague.  (See *Table Servs., Ltd. v. Hickenlooper* (Colo. App. 2011) 257 P.3d 1210, 1215-1217 [constitutional amendment indexing minimum wage to "the Consumer Price Index used for Colorado" was not impermissibly vague].)  If the parties have evidence that some other CPI was intended, even though they did not present it in support of or in opposition to the SLAPP motion, we do not mean to preclude them from presenting it in subsequent litigation.

In a twist on its vagueness argument, the District also argues that the initiatives are invalid because they require it to take future legislative action — i.e., to determine which CPI to use.  We recognize that an initiative must enact a statute; it cannot "merely state policies and direct the [governmental entity] to enact unspecified laws pursuant to those policies."  (*Widders v. Furchtenicht* (2008) 167 Cal.App.4th 769, 785.)  Here, however, because it is possible to discern which CPI the initiatives were referring to, there is no need for any further action by the District.

4. *The fiscal consequences of the initiatives*.

The District contends that the initiatives are invalid because they would (1) violate Water Code section 31007; (2) interfere with the provision of an essential governmental service; and (3) unconstitutionally impair the obligation of contract.

In opposition to the SLAPP motion, the District presented extensive and detailed evidence that its 2011 water and sewer rate increases were absolutely necessary due to revenue declines and cost increases, both of which were beyond its control.  "Between 2007 and 2010, [the District] experienced operating losses of $2.9 million to $3.5 million

annually." If the initiatives pass and rates are rolled back, the District would be unable to meet its costs, pay its debts, and stay in business; the potential consequences for the local water supply would be disastrous.

The Proponents did not contradict this evidence. In this appeal, they belatedly question some of the District's assumptions about future income and expense trends. There is no *evidence*, however, that those assumptions are incorrect. In any event, as already discussed (see part III.B., *ante*), we must accept the District's evidence as true.

i.      *Preelection review*.

Preliminarily, the Proponents argue that, because the District's challenges based on this evidence raise factual issues, they are not ripe for preelection review.

"'[I]t is usually more appropriate to review . . . challenges to ballot propositions or initiative measures after an election rather than to disrupt the electoral process by preventing the exercise of the people's franchise, in the absence of some clear showing of invalidity.' . . . [H]owever, ' . . . " . . . this general rule applies primarily when a challenge rests upon the alleged unconstitutionality of the substance of the proposed initiative, and . . . the rule does not preclude preelection review when the challenge is based upon a claim, for example, that the proposed measure may not properly be submitted to the voters because the measure is not legislative in character or because it amounts to a constitutional revision rather than an amendment. [Citations.]" [Citation.]' . . . [P]reelection review of an initiative measure may be appropriate when the challenge is not based on a claim that the substantive provisions of the measure are unconstitutional,

32

but rests instead on a contention that the measure is not one that properly may be enacted by *initiative*. [Citations.]" (*Independent Energy Producers Assn. v. McPherson* (2006) 38 Cal.4th 1020, 1029.)

"'It is clear that a measure may be kept off the ballot if it represents an effort to exercise a power which the electorate does not possess. [Citations.]' [Citation.]" (*City of San Diego v. Dunkl*, *supra*, 86 Cal.App.4th at p. 400.) Here, the District claims that the voters lack the power to enact the initiatives because the initiatives would set its water rates below its costs and thus would force it to default on its debts and put it out of business. At least for purposes of the SLAPP motion, this does not present a factual issue, because the Proponents have not presented any contrary evidence. (See *Reycraft v. Lee* (2009) 177 Cal.App.4th 1211, 1217 [Fourth Dist., Div. Two] ["[w]hen the facts are undisputed, the legal significance of those facts is a question of law"].)

Even if it did present a factual issue, however, the Proponents cite no authority for the proposition that the mere existence of a factual issue precludes preelection review. To the contrary, the Supreme Court has observed that "an initiative petition's alleged failure to have obtained the requisite number of qualified signatures" — an issue that would appear to be quintessentially factual — can be litigated preelection. (*Costa v. Superior Court* (2006) 37 Cal.4th 986, 1006.)

Finally, the Proponents do not dispute that at least some of the District's claims are subject to preelection review. For example, they do not argue that we cannot reach the District's claim that the initiatives are invalid under *Bighorn*. (See part III.C.2., *ante*.) In

33

*Citizens for Responsible Behavior v. Superior Court* (1991) 1 Cal.App.4th 1013 [Fourth Dist., Div. Two], this court indicated that when an initiative is challenged on multiple grounds, some of which may be heard preelection and others which, at least ordinarily, may not, a court may proceed to resolve all the challenges on a preelection basis: "[T]here is an analogy to the federal concept of 'pendent jurisdiction.' That is, if we are 'permitted' (as petitioner would have it) to conduct a preelection review of a particular measure on the issue of the electorate's power, there is no logical reason why we should be prohibited from reaching all the challenges raised to the measure. [¶] [A contrary] rule would encourage multiple litigation of the most mischievous sort. Having found no 'ultra vires' impropriety, a court would be compelled to permit a measure to be submitted to the voters without addressing even the most patent issues of substantive invalidity. The voters, having been apparently assured that the measure would be effective if approved, would not unreasonably feel betrayed when the court later entertained a new challenge which proved successful. We reject this position." (*Id*. at p. 1023, fn. 5.)

ii.     *Water Code section 31007*.

We turn, then, to whether the initiatives are invalid under Water Code section 31007. As already mentioned, Water Code section 31007 requires that a county water district's rates be fixed high enough to cover certain specified costs.

Also as already mentioned, the water district in *Bighorn* was subject to a similar statute. That statute could have been the basis for two distinct challenges to the proposed initiative: (1) under the exclusive delegation rule, the water district's board of directors

34

had the exclusive power to set its water rates and charges; or (2) the particular water rates and charges set by the initiative were insufficient to cover the water district's costs. (*Bighorn*, *supra*, 39 Cal.4th at p. 210.)

The water district insisted that it was raising only the first issue. (*Bighorn*, *supra*, 39 Cal.4th at p. 210.) Thus, with regard to that issue, the Supreme Court held that article XIII C, section 3 trumped the exclusive delegation rule. It explained: "The Legislature is bound by the state Constitution . . . , and the evident purpose of article XIII C is to extend the local initiative power to fees and charges imposed by local public agencies. . . . [T]he Legislature's authority in enacting the statutes under which the Agency operates must in this instance yield to constitutional command." (*Bighorn*, at p. 217.)

The Supreme Court declined to decide the second issue. It stated: "[W]e are not holding that the authorized initiative power is free of all limitations. In particular, we are not determining whether the electorate's initiative power is subject to the statutory provision requiring that water service charges be set at a level that 'will pay the operating expenses of the agency, . . . provide for repairs and depreciation of works, provide a reasonable surplus for improvements, extensions, and enlargements, pay the interest on any bonded debt, and provide a sinking or other fund for the payment of the principal of such debt as it may become due.' [Citation.] That issue is not currently before us." (*Bighorn*, *supra*, 39 Cal.4th at p. 221.)

We perceive a significant distinction between the two issues. The controlling constitutional provision is article XIII C, section 3, which provides that local

governmental charges *can* be reduced or repealed by initiative. This is totally irreconcilable with any statutory rule that a water district *cannot* set its charges by initiative. However, it is not similarly irreconcilable with a statutory rule that a water district must set its charges high enough to cover its costs.

"[T]he local electorate's right to initiative . . . is generally co-extensive with the legislative power of the local governing body. [Citation.]" (*DeVita v. County of Napa*, *supra*, 9 Cal.4th at p. 775.) There is a "constitutionally based presumption that the local electorate could legislate by initiative on any subject on which the local governing body could also legislate." (*Id*. at p. 777.)

Thus, if the state Legislature has restricted the legislative power of a local governing body, that restriction applies equally to the local electorate's power of initiative. For example, in *deBottari v. City Council* (1985) 171 Cal.App.3d 1204 [Fourth Dist., Div. Two], we noted that Government Code section 65860 "prohibits enactment of a zoning ordinance that is not consistent with the general plan." (*deBottari*, at p. 1210.) We concluded that a local referendum, which, if passed, would have caused a city's zoning ordinances to be inconsistent with the city's general plan, was invalid. (*Id*. at pp. 1210-1212.) If the rule were otherwise, the voters of a city, county, or special district could essentially exempt themselves from statewide statutes.

Article XIII C, section 3 does not alter this traditional limitation on the initiative power. As already mentioned, it provides that "[n]otwithstanding any other provision of this Constitution, including, but not limited to, Sections 8 and 9 of Article II, *the initiative*

36

*power shall not be prohibited or otherwise limited* in matters of reducing or repealing any local tax, assessment, fee or charge." (Italics added.) Thus, it presupposes an otherwise valid use of "the initiative power."[6] The voters of a local water district simply lack the initiative power to exempt themselves from Water Code section 31007.

The Proponents may argue that a water district has the ability to pad its own "operating expenses," through inflated salaries, sweetheart pension deals, lavish offices, etc.; the voters should be able to rein in such profligate expenditures by initiative. In this case, however, despite the Proponents' suspicions, there is no *evidence* that the District's budget is padded or abusive. It is arguable that "operating expenses," as used in Water Code section 31007, should be construed to mean only expenses that are reasonable and/or in good faith. On this record, however, we need not decide this issue.

Instead, we merely note that Proposition 218 also provides that, before increasing any fee or charge, a local governmental entity must give affected property owners notice and an opportunity to protest. If a majority of them do protest, "the agency shall not

---

**6**    We are aware of a "Statement of Drafters' Intent" regarding Proposition 218. (Howard Jarvis Taxpayers Assn., Right to Vote on Taxes Act: Statement of Drafters' Intent (May 1996), available at <http://www.hjta.org/propositions/proposition-218/text-proposition-218-analysis>, as of Apr. 19, 2013.) However, because this statement was not included in the ballot pamphlet or otherwise presented directly to the voters, it is irrelevant to the construction of Proposition 218. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 904-905.)

In any event, according to the statement of intent, article XIII C, section 3 was "merely" intended to "'constitutionalize[]'" existing law to the effect that an initiative can be used "to reduce or eliminate government imposed levies . . . ." This supports our view that article XIII C, section 3 was not intended to expand the initiative power.

impose the fee or charge." (Cal. Const., art. XIII D, § 6, subd. (a)(2).) This gives the voters substantial protection against rate increases that, in their opinion, are due to extravagant costs. In this case, the District followed this procedure scrupulously; however, only about one out of every 500 property owners filed a protest. Finally, the voters always have the remedy of booting the members of the water district board out of office.

In sum, then, under Water Code section 31007, the District could not set water rates so low that they are inadequate to pay the costs listed in that section. We conclude that the local electorate does not have the power to do so by initiative, and article XIII C, section 3 was not intended to give it such power. The District has introduced uncontradicted evidence that the initiatives, if enacted, would set water rates so low that they would be inadequate to pay its costs. We therefore conclude that the District has shown the probable validity of its claim that the initiatives are invalid under Water Code section 31007.

In light of this conclusion, we need not decide whether the initiatives are invalid because they would interfere with the provision of an essential governmental service or because they would unconstitutionally impair the obligation of contract.

IV.

DISPOSITION

The order appealed from is affirmed.  In the interest of justice, each side shall bear its own costs.

CERTIFIED FOR PUBLICATION

RICHLI
J.

We concur:

RAMIREZ
P. J.

MILLER
J.